**NOT RECOMMENDED FOR PUBLICATION**

File Name: 11a0531n.06

**No. 09-6109**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Aug 02, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| Joseph Gillman, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: BOGGS and SILER, Circuit Judges; VAN TATENHOVE, District Judge.[*]

**SILER**, Circuit Judge.    Joseph Gillman pleaded guilty to transporting, receiving and possessing child pornography.  He appeals the district court's denial of his motions to suppress.  For the following reasons, we **AFFIRM**.

**BACKGROUND**

On December 16, 2006, police accessed a peer-to-peer internet file-sharing network and observed a subject using the Internet Protocol ("IP") address "69.138.63.81" possess and share a video depicting the sexual exploitation of a minor.  Comcast Cable Communications confirmed that the IP address was assigned to Joseph Gillman, who resided at 950 Needham Drive in Smyrna, Tennessee.

---

[*]The Honorable Gregory Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Over five months later, on June 7, 2007, Detective Brett Kniss drafted a search warrant and affidavit seeking authority to search Gillman's residence and computer for child pornography. In the affidavit, Kniss described his training and experience, how computers and the internet are used to traffic child pornography, and the likelihood that such videos would be saved and stored by computer users. Kniss explained how police obtained child pornography from Gillman's IP address and stated that Gillman "lives" at the 950 Needham Drive address. A state judge issued a search warrant on June 7.

On June 8, Kniss and four other officers arrived at Gillman's residence, told him they were conducting an investigation and asked to come inside. Once allowed inside, Kniss told Gillman he was not under arrest and would not be arrested that day. Kniss did not inform Gillman of his *Miranda* rights, mention the search warrant or tell him he was free to leave. During a thirty-minute conversation, Gillman admitted to viewing and sharing child pornography and told the officers they would find child pornography saved on his computer's hard drive. He never asked the officers to leave or stop questioning him at any time.

Kniss asked for Gillman's consent to search his computer and residence, but Gillman refused. Kniss then produced the search warrant and told Gillman he was free to leave, but Gillman remained and continued talking to Kniss for an additional fifty minutes. During the ensuing search, an officer discovered marijuana and arrested Gillman after informing him of his *Miranda* rights.

Officers seized a computer, external hard drive, twelve CDs and thirty-one floppy disks containing child pornography. Gillman was charged with transporting, receiving and possessing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1); 18 U.S.C. §§

2252A(a)(2)(A) and (b)(1); and 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(1). Gillman filed motions to suppress his statements to the officers and the evidence seized from his residence and computer. The district court denied his motions and Gillman pleaded guilty to all three charges, reserving the right to appeal the district court's denial of his suppression motions.

## DISCUSSION

### A. Standard of Review

When reviewing the denial of a suppression motion, we review the district court's findings of fact for clear error and its conclusions of law de novo, *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008), but give "great deference" to a magistrate's probable cause determination, *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008) (internal citation omitted).

### B. The Search Warrant

Gillman argues that the IP address was not itself a sufficient nexus between the sharing of child pornography and his residence because it was possible he used a wireless internet router—something that would have allowed anyone nearby to access the internet and share child pornography through his IP address.

Probable cause must exist for the issuance of a warrant. *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006). A magistrate must decide that "there is a fair probability that contraband or evidence of a crime will be found *in a particular place*." *Terry*, 522 F.3d at 648 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (emphasis added).

In *United States v. Hinojosa*, 606 F.3d 875, 885 (6th Cir. 2010), we held that a sufficient nexus between illegality and a defendant's residence was created where an affidavit established that:

(1) child pornography was transferred to police from a specific IP address; (2) that IP address was registered to the defendant's residential address; and (3) the defendant actually lived at that address. We rejected the defendant's argument that the IP address alone was an insufficient nexus despite the possibility that IP addresses are not always accessed at their registered residential addresses. *Id.* (citing *United States v. Lapsins*, 570 F.3d 758, 767 (6th Cir. 2009); *United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006)).

Thus, under *Hinojosa*, the IP address here established a sufficient nexus connecting the sharing of child pornography to Gillman's residence and computer. Gillman is correct—he could have used a wireless network and someone else could have accessed that network and shared child pornography. This possibility, however, does not negate the fair probability that child pornography emanating from an IP address will be found on a computer at its registered residential address. *Terry*, 522 F.3d at 648.

Gillman also argues that the information in Kniss's affidavit was stale because the warrant was executed five months after police observed child pornography shared through his IP address. Stale information cannot be used in a probable cause determination. *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009). Whether information in an affidavit is stale depends on the "inherent nature of the crime." *Id.* at 378 (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir 1998)). In *Frechette*, we held that child pornography "is not a fleeting crime" and is generally carried out "in the secrecy of the home and over a long period." *Id.* Child pornography can have an "infinite life span" because files containing child pornography "can be easily duplicated and kept indefinitely even if they are sold or traded." *Id.* at 378–79 (citing *Terry*, 522 F.3d at 650 n.2). Further, even after its

deletion, child pornography can still be discovered on a computer's hard drive. *Terry*, 522 F.3d at 650 n.2.

Thus, the information in Kniss's affidavit was not stale when he sought the search warrant. Citing Gillman's driver's license and vehicle registration, Kniss's affidavit stated that Gillman "lives"—as he had throughout the entire investigation—at the 950 Needham Drive address. Given the nature of child pornography, and our prior decisions upholding warrants despite similar delays, the almost six-month delay in obtaining a search warrant for Gillman's residence did not result in its staleness. *See United States v. Lewis*, 605 F.3d 395, 401 (6th Cir. 2010) (not stale after seven months); *Lapsins*, 570 F.3d at 767 (not stale after nine months); *Terry*, 522 F.3d at 650 n.2 (not stale after five months). As a result, the district court did not err by denying Gillman's motion to suppress evidence obtained through the search warrant.

## C. Gillman's Statements

Gillman argues that the district court erred by refusing to suppress his statements to police because, under *Miranda v. Arizona*, 384 U.S. 436 (1966), he was in custody once police arrived at his residence.

*Miranda*'s protections against self-incrimination only arise once a defendant is "in custody." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam) (internal quotation marks omitted). A suspect is in custody where there has been a formal arrest or restraint on freedom of movement to the degree associated with a formal arrest. *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003).

Until law enforcement discovered his marijuana, Gillman was never in custody. An in-home encounter between police and a citizen is generally non-custodial. *United States v. Panak*, 552 F.3d 462, 466 (6th Cir. 2009). Gillman was questioned for eighty minutes, and we have refused to find a defendant in custody during interrogations of similar length. *See Panak*, 552 F.3d at 467 (forty-five to sixty minutes); *United States v. Crossley*, 224 F.3d 847, 862 (6th Cir. 2000) (less than sixty minutes), *United States v. Mahan*, 190 F.3d 416, 420 (6th Cir. 1999) (ninety minutes). During his questioning, Gillman sat unrestrained and was told he was not (and would not be) under arrest. *See United States v. Salvo*, 133 F.3d 943, 951 (6th Cir. 1998) ("[F]reedom of movement, coupled with [the officer's] statement to [the defendant] that he was not under arrest, is compelling evidence that [the defendant] was not in custody."). That Gillman *was* arrested when officers discovered his marijuana does not make his questioning custodial. As a result, the district court did not err by denying Gillman's motion to suppress his statements to police.

**AFFIRMED**.