NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0183n.06

No. 10-2692

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Feb 14, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| RICHARD ALLAN ZORN, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GRIFFIN and KETHLEDGE, Circuit Judges; and THAPAR, District Judge.[*]

KETHLEDGE, Circuit Judge. Around November 24, 2009, a police officer applied for a warrant to search America Online's records for "any accounts associated with the screen name of littledommegirl and yourlittledommebitch." The supporting affidavit cited a complaint from the National Center for Missing and Exploited Children. According to the affidavit, the Center had disclosed information from Yahoo! Inc. that "an account utilizing America Online (AOL) was involved in an incident that contained Child Pornography (Possession, Manufacture, and Distribution)." The culprit, according to the affidavit, used "yourlittledommebitch" and "LittleDommeGirl@aol.com" as an AOL username and email address. The affidavit further described several images of child pornography that had been attached to the complaint.

_____

[*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

In addition, the affidavit stated that, on November 20, 2009, the police had received two more complaints from the Center. According to the affidavit, "[b]oth complaints had the AOL email address of littledommegirl@aol.com," and each new complaint "contain[ed] a video" of child pornography. Finally, the affidavit disclosed that the police had subpoenaed Comcast, to which littledommegirl's IP address "belong[ed]," and traced the account to Richard Zorn at an address in Taylor, Michigan. A magistrate judge issued a warrant that authorized the police to search the AOL account for subscriber information, including emails.

An investigator examined the AOL account. He discovered that Zorn had "sent videos and pictures of what appeared to be child pornography from his home computer." The police then filed an application for a warrant to search Zorn's home. This second application recited the allegations in the original and added the discovery of child pornography during the search of the AOL account. A magistrate issued the second warrant. The police executed the warrant and discovered more child pornography in Zorn's home.

A federal grand jury indicted Zorn for distribution, receipt, and possession of child pornography. He filed a motion to suppress the evidence seized from his AOL account and his home. The district court denied his motion. Zorn then entered a conditional guilty plea that reserved his right to appeal on the suppression issue. At sentencing, Zorn requested that the district court reduce his sentence to account for the eight months he had already spent in state custody awaiting sentencing for the same conduct. The district court denied Zorn's request and sentenced Zorn to 151 months in prison. Zorn now appeals the denial of his suppression motion and the district court's refusal to reduce his sentence.

Zorn argues that the affidavits attached to both search warrants failed to supply probable cause to believe that either his AOL account or his home would contain evidence of a crime at the time of the search. He first says that the affidavits never alleged that he had committed a crime. Instead, he says, the affidavits said only that his AOL account was "involved in an incident that contained Child Pornography" and that each of the later two complaints "had [his] AOL email address" and "contained a video" of child pornography. Zorn insists that these descriptions of the facts could have had innocent explanations: Perhaps he had merely received child pornography in spam emails, or maybe he had used his email account to join a group where someone happened to post child pornography. *Cf. United States v. Terry*, 522 F.3d 645, 650 (6th Cir. 2008) (expressing concern that an affidavit did not rule out the possibility that the defendant innocently received child pornography in a spam email). Thus, Zorn contends that the district court should have suppressed the fruits of the warrant.

It is true that the affidavits did not specifically describe how Zorn's AOL account was "involved" in a child pornography incident. But just as there are only so many ways a car can be "involved in" a car accident, there are only so many ways a person's email or AOL account can be "involved in" a child pornography incident—particularly when the username is "yourlittledommebitch," *see United States v. Shields*, 458 F.3d 269, 278 (3d Cir. 2006). The account holder can send or receive pornography in an email. *See Terry*, 522 F.3d at 648. Or the account holder can use his email address or service-provider account to join or access a website that hosts child pornography. *See United States v. Frechette*, 583 F.3d 374, 379–80 (6th Cir. 2009). No matter which of these applies here, the police could have believed, in good faith, that a search of the email

or service-provider account would reveal evidence that someone—whether it be Zorn or a spam emailer—was involved in a crime involving child porn. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 559–60 (1978) (holding that the police may search anywhere they have probable cause to believe that they will find evidence of a crime, even if the owner of the premises is not a suspect). Either the email account would contain incriminating messages, or Zorn's browsing history would reveal his access to a child pornography website. Thus the warrant's failure to specify how Zorn accessed child pornography does not justify excluding the fruits of the warrant. *See United States v. Leon*, 468 U.S. 897, 922 (1984).

Zorn further argues that the affidavits failed to supply probable cause because the warrant "does not indicate how Yahoo! received [the information about Zorn in the first complaint] or where the information in the other two [] complaints came from." (Zorn does admit, however, that the Center is "undoubtedly a reliable source" and that Yahoo!'s "reliability can be presumed." R. 12 at 9.) He also notes that the affidavits failed to disclose when the Center received information about the child porn incidents or when the incidents occurred. But the police could have reasonably concluded that the affidavits did disclose how Zorn's involvement in child pornography was exposed. The affidavits say that Yahoo! reported an incident involving Zorn's AOL username and email address. That information suggests either that Yahoo! discovered an email sent from Zorn's AOL email to a Yahoo! email user or that Yahoo! monitored Zorn's usage of a website that Yahoo! hosted. As for the timeliness of the complaints, it is was no secret to anyone in 2009 that the digital world has a "'long memory,'" even for files users try to delete. *See Frechette*, 583 F.3d at 381 (quoting *United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006) (en banc)); *United States v.*

*Truitt*, 521 F.2d 1174, 1177 (6th Cir. 1975) (relying on "common knowledge" to supply probable cause). Thus, the police relied on the warrants in good faith. The district court correctly denied Zorn's suppression motion. *See Leon*, 468 U.S. at 922.

Finally, Zorn challenges the district court's refusal to reduce his sentence for the time he had already spent in state custody awaiting a sentence in state court for the same conduct. He cites section 5G1.3(b) of the Sentencing Guidelines, which states that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense . . . [and is] the basis for an increase in the offense level for the instant offense," then the district could should order its sentence to run concurrently with the other and "adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment." *Id.* § (b)(1), (2). The problem with Zorn's argument, however, is that § 5G1.3(b) only applies if the federal court is in a position to order that the federal sentence run concurrently with the state sentence, *see* § 5G1.3(b)(2), and the defendant is subject to a "term of imprisonment [that] resulted from another offense." But a federal court is powerless to order that its sentence run concurrently with a state sentence if the state court has not yet sentenced the defendant. *See United States v. Quintero*, 157 F.3d 1038, 1039–41, 1039 n.1 (6th Cir. 1998); *see also United States v. Custard*, No. 99-6239, 2000 WL 1290338, at *2 (6th Cir. Sept. 5, 2000). Moreover, a federal defendant who has not yet received a sentence in state court is not yet subject to a "term of imprisonment [that] resulted from another offense." *See United State v. Rollins*, 552 F.3d 739, 742 (8th Cir. 2009) (citing the definition of "term of imprisonment" in 8 U.S.C. § 1101(a)(48)(B)); *cf. King v. United States*, No. 96-2515, 1997 WL 580776, at *2 (6th Cir. Sept. 18, 1997) (holding that an older version of § 5G1.3 did not apply where the state sentence had "yet-

to-be-imposed"). Neither of those circumstances was present here, so § 5G1.3(b) was inapplicable, and the district court correctly declined to adjust Zorn's sentence.

The district court's judgment is affirmed.