NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0464n.06

No. 17-6430

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Sep 07, 2018<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MARK M. BROWN, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SILER, GRIFFIN, and STRANCH, Circuit Judges.

GRIFFIN, Circuit Judge.

Police entered defendant Mark Brown's hotel room without a warrant and saw two guns and drug paraphernalia in plain view. They then obtained a warrant, entered the room again, and found a third gun, drugs, and more paraphernalia. When charged with drug and gun crimes, Brown moved to suppress the evidence from both entries. The district court denied the motion, and Brown now appeals that denial. We affirm Brown's convictions based on the evidence legally seized in the warrant-based search.

I.

Early one morning in August 2016, police received a call from the front-desk clerk at a Super 8 Motel in Maysville, Kentucky. The clerk said a woman was hiding in the staff office and claiming the man she was with might have a gun.

When officers got to the hotel, they spoke with the woman, whom they identified as Chastity Smith. Although she was obviously intoxicated, she understood questions and answered coherently. She claimed defendant Mark Brown had a gun, had given her methamphetamine to hide for him, and had a "softball-sized ball" of methamphetamine in a cooler in his room. Smith then gave officers the baggie of methamphetamine she claimed Brown had given her.

Police encountered Brown in the lobby. They searched him and found about $10,000 but no weapons. Two officers detained him.

Two other officers then took Smith to Brown's room. One of them asked Smith for her consent to enter the room, which Smith gave. No one had a keycard, but the door was ajar, so the officer pushed it open and went inside. In plain view the officer saw two guns and drug paraphernalia. He emptied the guns' magazines and relayed the serial numbers to dispatch.

Soon thereafter, officers learned Brown was a convicted felon. They then obtained a warrant to search his room. Inside they found a cooler containing methamphetamine, the two handguns in plain view during the previous entry, a third handgun, ammunition, pills, marijuana, and drug paraphernalia.

A grand jury later indicted Brown for (1) possessing fifty grams or more of methamphetamine with intent to distribute; (2) possessing a firearm in furtherance of drug trafficking; and (3) being a felon in possession of firearms. Brown moved to suppress the evidence found in the hotel room. The district court denied the motion.

On the second day of trial, Brown conditionally pleaded guilty to the first and second charges (in exchange for the government dismissing the third charge), but reserved the right to appeal the denial of his suppression motion.

Brown now argues that the government violated his Fourth Amendment rights in three ways. First, he contends the warrantless entry into his hotel room was illegal. Second, assuming the entry was legal, he submits that relaying the serial numbers of the two guns found in plain view exceeded the scope of the warrantless entry. And third, he asserts that the affidavit did not establish probable cause if we exclude everything discovered in the warrantless entry. To resolve this case, we need reach only Brown's third argument.

## II.

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The probable cause standard is flexible and based on common sense, *Texas v. Brown*, 460 U.S. 730, 742 (1983); it requires more than mere suspicion but less than prima facie proof. *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In other words, a warrant affidavit must contain information sufficient to convince an issuing judge that there is a fair probability officers will find evidence of a crime in a particular place. *See United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008).

We give great deference to an issuing judge's finding of probable cause; we will reverse only if we find no "substantial basis" for it. *United States v. Miller*, 314 F.3d 265, 268–69 (6th Cir. 2002). When determining whether a substantial basis exists for a specific finding, we consider the totality of the circumstances instead of examining the affidavit line by line. *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001).

When a district court denies a motion to suppress, we review all factual findings for clear error and all legal conclusions de novo. *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir.

2002). We also consider the evidence in the light most favorable to the government. *United States v. Navarro-Diaz*, 420 F.3d 581, 584 (6th Cir. 2005).

III.

Here, the warrant affidavit outlined in a single paragraph the factual basis for the warrant. For ease of comprehension, we have separated the paragraph and struck through the portions related to the warrantless entry:

> At approximately 5:25 am Maysville Police were called by Super 8 motel personnel advising of a possible domestic situation. The clerk advised that a female came to the desk and stated that the male subject had a gun in his pocket and had guns in the room. The female also said another female was hiding in the restroom of the room.
>
> When the Affiant and other MPD officers responded they encountered the female and identified her as Chasity Smith. Smith stated that the male subject Mark Brown, threw her a bag of "dope" which Affiant believes to be methamphetamine. The substance has not yet been tested. She also told Affiant that Brown had guns and she expressed fear for her own safety.
>
> Mark Brown then came into the lobby and advised Affiant that he would not speak with officers. A criminal history check reflects that the [*sic*] Brown is a convicted felon. ~~The door to the room was slightly ajar, and MPD officers made entry into the room to determine if there indeed was another female in the room needing assistance. No female or other person was present in the room.~~ When Mark Brown was patted down no weapons were located, but Brown had approximately $10,000 in cash on his person, which is being held by MPD.
>
> Chasity Smith advises that Brown is or was cooking methamphetamine in a cooler in the room. She also says there are pills in the room. ~~MPD officers saw a cooler in the room, and saw two handguns and a crack pipe in the room in plain view.~~
>
> Both Mark Brown and Chasity Smith were both [*sic*] staying in the room, and Chasity Smith will consent to search. Due to the objection of Mark Smith [*sic*], this search warrant is being obtained.
>
> The vehicle identified above is located in the parking area of the motel and is in the possession of Mark Brown. MPD canine indicated that such vehicle contains the odor of drugs. ~~Room has been secured and~~ questioning of Chasity Smith continues. Mark Brown is being detained pending charging.

The affidavit as edited contains substantial incriminating information establishing probable cause to search the hotel room. Smith's statements that Brown "was cooking methamphetamine in a cooler in the room" and that "there [were] pills in the room" were eyewitness accounts of ongoing criminal activity. Although Smith's intoxication at the time called into question her credibility, she provided corroborating physical evidence: the baggie of suspected methamphetamine she allegedly got from Brown. Also supporting the probable cause finding was the approximately $10,000 in cash Brown had on him: an unusually large sum to have on one's person that, when viewed in the light most favorable to the government and in the context of Smith's statements, suggested Brown was selling drugs. And the drug dog's hit on Brown's vehicle buttressed the probable cause finding as well; it demonstrated that Brown had drugs in the area, which in turn corroborated (1) Smith's allegations that Brown had drugs in the room and (2) officers' belief that the substance in the baggie was methamphetamine.

Taken together, this information provided a substantial basis for the issuing judge to conclude there was a fair probability of officers finding evidence of a drug crime in the hotel room. An eyewitness statement, alone, generally constitutes sufficient probable cause. *See Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). And here, the issuing judge had even more than Smith's eyewitness statement—he had physical evidence corroborating her story. Thus, the district court correctly denied Brown's suppression motion regarding the evidence discovered during the warrant-based search.

Because the evidence seized legally in the warrant-based search is sufficient to support Brown's guilty-plea convictions, it is not necessary for us to address his arguments regarding the warrantless search.[1]

IV.

For these reasons, we affirm defendant's convictions.

---

[1] And if we did, the doctrine of inevitable discovery would lead us to affirm the district court's denial of Brown's suppression motion as to the items seen during the warrantless entry. When compelling facts establish that officers inevitably would have discovered disputed evidence, the inevitable discovery doctrine triggers as an exception to the exclusionary rule. *See United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995). We have applied the doctrine when a warrant-accompanied search followed a potentially illegal one. *See*, *e.g.*, *United States v. Keszthelyi*, 308 F.3d 557, 574 (6th Cir. 2002). So has the Supreme Court. *See*, *e.g.*, *Murray v. United States*, 487 U.S. 533, 541–43 (1988); *Segura v. United States*, 468 U.S. 796, 813–16 (1984). Here, for the same reasons supporting the probable cause determination, compelling facts show that officers inevitably would have discovered the guns, their serial numbers, and the drug paraphernalia seen during the warrantless entry. Thus, even if we assume without deciding that the warrantless entry was illegal, the district court correctly denied Brown's suppression motion as to the items seen during that entry because they "would have been discovered during [the] later legal search" and because "the second search inevitably would have occurred in the absence of the first." *Keszthelyi*, 308 F.3d at 574.