NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0502n.06

No. 22-5194

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 06, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| JOSHUA A. GAMBLE, | ) | OPINION |
| Defendant-Appellant | ) ) | |

Before: BOGGS, STRANCH, and THAPAR, Circuit Judges.

BOGGS, Circuit Judge. Defendant Joshua A. Gamble was charged in a multi-defendant federal indictment with: (1) conspiracy to distribute methamphetamine; (2) distribution of methamphetamine; (3) possession with intent to distribute methamphetamine; (4) being a convicted felon in possession of a firearm; and (5) possession of firearms in furtherance of drug-trafficking. He moved to suppress evidence obtained through a search of his home, arguing that the search warrant was not supported by probable cause. The magistrate judge issued a Report and Recommendation (R&R) denying Gamble's motion, which the district court adopted. After the United States dismissed the fourth count against Gamble, he pleaded guilty to the remaining charges, but reserved his right to appeal the denial of his motion to suppress. Gamble has appealed. For the following reasons, we affirm.

# I. BACKGROUND

## A. Facts[1]

On the afternoon of August 24, 2020, Officer Matt Smith of the Greenup County Sheriff's Department was conducting a routine traffic patrol on KY Route 503 when he saw a car holding up traffic and swerving across the roadway. After Smith began trailing the car, the car activated its hazard lights, and turned into the driveway of an abandoned home. Smith pulled in behind the car and flashed his police cruiser's emergency lights. As he walked up to the car, Smith noted a driver and two passengers and smelled an odor of burnt marijuana emanating from the driver's window. Smith called for backup and asked the driver to step out of the car. The driver told Smith that he had smoked marijuana earlier that day, and, as he exited the car, Smith saw him hand marijuana to one of the passengers.

When Deputy Sheriff Heighton arrived at the scene, Smith asked the passenger who had received the marijuana to exit the car and to identify where the marijuana was. The passenger retrieved the marijuana from the center console of the vehicle. She then told the officers that she was having trouble breathing. The officers asked the passenger to take a seat in the shade and called for an ambulance.

The officers then asked the second passenger to exit the car. They searched the car and found two cylinder-shaped tubes taped together, containing two syringes and methamphetamine wrapped in plastic. One of the syringes appeared to have blood on it, indicating prior use. The

---

[1] Neither party in this case requested an evidentiary hearing. The following facts are set forth in Officer Matt Smith's Affidavit in Support of the Search Warrant, upon which the trial court based its factual findings. Because the affidavit has been redacted, we use "driver," "first passenger," and "second passenger" as labels for the individuals named therein.

officers found another syringe in a rear passenger-door compartment. The ambulance arrived soon after and transported the first passenger, who had reported trouble breathing, to a hospital.

Meanwhile, the driver and second passenger were transported to the Greenup Detention Center. While en route, the second passenger also reported difficulty breathing. The officers radioed for a medical unit to meet them at the jail. A second ambulance arrived and transported the second passenger to the hospital.

The driver then told Heighton that he wanted to talk about where the drugs came from. The driver was transported to the Greenup County Sheriff's Office, where he was given his *Miranda* warnings. In the interview that followed, the driver detailed the events of that afternoon. The driver explained that, earlier in the day, he had called Gamble to discuss trading him a small YETI cooler. After Gamble indicated an interest in the driver's larger YETI cooler, the driver drove to Gamble's home with two passengers (the same ones later apprehended with him). The driver went into Gamble's home with one of the passengers, while the other one stayed behind with the car. While inside, the driver traded both YETI coolers to Gamble for 1.5 grams of methamphetamine, packaged in a clear sandwich baggie.

The driver stored the baggie in a black, flip-opened container and returned to the car. As he approached the car, the driver saw the second passenger ingesting methamphetamine, which he did not appear to possess prior to their stop at Gamble's home. The driver noticed at least one other car at Gamble's home—a white pickup truck. The driver further stated that he had purchased methamphetamine from Gamble on four or five other occassions, that Gamble usually charged him $90 for approximately 1.75 grams of methamphetamine, and that the baggie with methamphetamine that he traded for appeared to be similar to ones that he had purchased in the past.

Later that evening, Smith applied for and was granted a search warrant based on the information contained in his affidavit and the driver's written statement, which was attached as an exhibit. The warrant authorized a search of Josh Gamble, the home at 49 Chapman Road, and any vehicles, individuals, or containers on the surrounding premsises, where controlled substances or evidence of an illegal drug transaction might be found.

Later that night, a team of police officers executed the search warrant. The search yielded, among other things, approximately seven ounces of methamphetamine, four firearms, four Troy ounce bars of gold, three digital scales, and a YETI cooler. On Novemember 5, 2020, Gamble was indicted in federal court for (1) conspiracy to distribute methamphetamine; (2) distribution of methamphetamine; and (3) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii). He was also charged with (4) being a convicted felon in possession of firearms; and (5) possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1)(A), respectively.

### B. Procedural History

Following his arraignment, Gamble moved to suppress all evidence obtained from the search of his home. He argued that the information contained in Smith's affidavit was insufficient to establish probable cause and that any evidence obtained from the search should be suppressed as fruits of the poisonous tree. Magistrate Judge Atkins issued an R&R, recommending that the district court deny Gamble's motion to suppress because Smith's affidavit was sufficient to establish probable cause and that, in any event, Smith's actions satisfied the good-faith-exception standard of *United States v. Leon*, 468 U.S. 897 (1984). The district court adopted the R&R and denied Gamble's motion. While acknowledging that this was "a close case," the district court agreed that, under the totality of the circumstances, there was a substantial basis for the magistrate

judge to find probable cause to issue a search warrant. The court also agreed that, even if probable cause was lacking, the good-faith exception would apply.

Gamble ultimately pleaded guilty to four of the five counts, but reserved his right to appeal the district court's denial of his suppression motion. He was convicted and sentenced to 220 months in prison. On appeal, Gamble argues that the district court erred in denying his motion to suppress because the affidavit lacked probable cause and that the good-faith exception does not apply under these facts.

## II.  ANALYSIS

### A.  Standard of Review

In reviewing the denial of a motion to suppress evidence, we review the district court's findings of facts for clear error and its legal conclusions de novo. *United States v. Crumpton*, 824 F.3d 593, 615 (6th Cir. 2016). However, "'when judging the sufficiency of an affidavit to establish probable cause in support of a search warrant,' we 'accord the magistrate's determination great deference.'" *United States v. Crumpton*, 824 F.3d 593, 615 (6th Cir. 2016) (quoting *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008)). So, while a finding of probable cause is a legal conclusion that is reviewed de novo, we will reverse an issuing judge's decision only if it is arbitrary. *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008); *see also Illinois v. Gates*, 462 U.S. 213, 239–40 (1983) ("[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960) (insertions in *Gates*)).

### B.  Probable Cause

"Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States*

*v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) (quoting *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003)). Where an informant's tip serves the basis for an affidavit in support of a search warrant, independent police corroboration of the informant's story or a showing that the informant provided reliable tips in the past may help establish probable cause. *See United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). But neither is required. *See ibid.* An informant's tip may be supported by "other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name." *McCraven*, 401 F.3d at 697. "As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on [an] informant's tip will support a finding of probable cause." *Ibid.*

For the following reasons, we conclude that, under the totality of the circumstances, the affidavit at issue was sufficient to establish probable cause.

First, the driver's detailed, first-hand account of his most recent drug transaction with Gamble supports a finding of probable cause. The driver explained that he had spoken with Gamble on the phone earlier that day to discuss trading his coolers for methamphetamine. He then drove with two passengers to Gamble's residence at 49 Chapman Road to complete the transaction. The driver described, in detail, the drug transaction that took place ("[W]hen I returned to the inside of the trailer there a clear sandwich baggie in front of the seat where I was sitting") and what he saw when he returned to the car ("a white pickup truck" and the remaining passenger ingesting methamphetamine that he apparently obtained at Gamble's residence). The driver further admitted to purchasing similar amounts of methamphetamine from Gamble, at his residence, on prior occasions. Thus, there was ample detail to support the likelihood of the tip's validity.

Second, Smith's encounter with the driver and passengers corroborated the driver's account. Although we have held that "corroboration is not a necessity" where the affidavit contains sufficient indicia of an informant's reliability, here, Smith's observations, as detailed in the affidavit, corroborated the tip. *Allen*, 211 F.3d at 976. Specifically, Smith observed their car driving erratically along KY Route 503, the main and only thoroughfare leading to and from Gamble's residence at 49 Chapman Road, around the time the driver stated that he had purchased methamphetamine from Gamble. Upon searching the car, the officers found methamphetamine wrapped in plastic and three syringes. One of the syringes was stained with blood, indicating prior methamphetamine use, which would also tally with the driver's account of methamphetamine use by a passenger. Both passengers exhibited symptoms requiring urgent medical attention, indicating recent methamphetamine use. These details belie Gamble's argument that the affidavit could not establish probable cause because it lacked facts indicating independent police corroboration.

Third, the driver, in voluntarily speaking with the officers about the drug transaction, made statements against his own penal interest, which further indicated his reliability. *Cf. United States v. Czuprynski*, 46 F.3d 560, 564 (6th Cir. 1995) (noting that because the affidavit contained admissions of the informant's own drug use, which was contrary to her penal interest, it bore "intrinsic evidence of credibility"); *United States v. Riddick*, 134 F. App'x 813, 821–22 (6th Cir. 2005) (collecting similar cases). Over the course of an interview, and again in writing, he not only detailed his purchase of methamphetamine from Gamble that afternoon, but also admitted to purchasing methamphetamine from Gamble on four or five prior occasions.

Finally, the driver allowed his name to be included in the affidavit and thus made it known to the issuing magistrate. While we do not give "dispositive weight to an informant's tip merely by virtue of [his] being named in the affidavit," the fact that an informant is named may contribute

to the tip's reliability in cases like this one where there are also "other indicia of reliability." *United States v. Howard*, 632 F. App'x 795, 800, 801 n.2 (6th Cir. 2015). "What police know about an individual informant plays a significant role in evaluation of [his] veracity. Tips from anonymous persons, for example, 'demand more stringent scrutiny of their veracity, reliability, and basis of knowledge . . . .'" *Id.* at 799 (quoting *United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003)).

The indicia of reliability in this case rise above the level that we have held sufficient to sustain a search warrant in cases such as *United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986). In *Pelham*, the affidavit contained only the name of an informant and a statement that the informant had seen the defendant storing and selling marijuana inside his residence within the past twenty-four hours. *Id.* at 876. While noting that the "information contained in the affidavit could have been more detailed," we upheld the search warrant, reasoning that "there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime than [the informant's] direct viewing of marijuana in [the defendant's] house." *Id* at 878. In doing so, we held that "[w]hen a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." *Ibid.*

As in *Pelham*, the driver in our case swore to a drug transaction that he had personally observed at Gamble's residence within the past twenty-four hours. And he agreed to be named in the affidavit presented to the magistrate. The affidavit here went even further. It detailed the events leading to the drug transaction, the dynamics of the drug transaction, and other observations made by the driver over the course of his visit at Gamble's home that afternoon. The timing, location, and circumstances surrounding Smith's encounter with the driver and passengers further supported the driver's first-hand account. And, unlike the informant in *Pelham*, who had merely "seen [the

defendant] storing and selling [m]arijuana," the driver admitted to purchasing marijuana from Gamble on not just one, but four or five prior occasions. Taken together, the level of first-hand detail provided by the driver, the corroborating circumstances of Smith's stop, and the incriminating statements made by the driver, who was willing to be named in the affidavit, presented the magistrate with sufficient indicia of reliability to find probable cause.

The cases that Gamble cites suppressing evidence from an invalid search warrant do not support his position, but merely emphasize the requirement that there be sufficient indicia of an informant's reliability. In *United States v. Leake*, for example, "[m]ore police work was needed" because the supporting affidavit was based entirely on a tip from an *anonymous* caller who refused to give his name and did not mention any of the defendants' names or any of the times during which he allegedly saw evidence of criminal activity. 998 F.2d 1359, 1365 (6th Cir. 1993) (emphasizing that "[t]here was little in the affidavit that provided indicia of the caller's reliability"). The affidavit in *United States v. Weaver* was largely "boilerplate" and "provide[d] few, if any, particularized facts on an incriminating nature." 99 F.3d 1372, 1379 (6th Cir. 1996). Finally, in *United States v. Dyer*, we affirmed a denial of a motion to suppress, finding "sufficient indicia of reliability *without* substantial independent police corroboration" where, as in this case, "the informant witnessed the illegal activity on the premises searched and was known to the officer writing the affidavit." 580 F.3d 386, 392 (6th Cir. 2009) (emphasis added).

The relevant inquiry for informant-based affidavits is whether sufficient indicia of reliability exist to support a finding of probable cause. *McCraven*, 401 F.3d at 697; *cf. Allen*, 211 F.3d at 974–75 (distinguishing cases, including *Leake* and *Weaver*, where independent police corroboration was necessary to establish probable cause "because of the absence of any indicia of the informants' reliability" in the affidavit). Where, as here, an affidavit includes a detailed, firsthand

account of a recent drug transaction in which the informant participated, circumstantial evidence that corroborates that account, and inculpatory statements made by the informant, whose name was made known to the magistrate, the affidavit provides a substantial basis to find probable cause. Because probable cause exists on these facts, an analysis of the good-faith exception is unnecessary.

The judgment of the district court is **AFFIRMED**.