RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

      *v.*

MICHAEL HINOJOSA,

        *Defendant-Appellant.*

No. 08-1393

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00093-01—Paul Lewis Maloney, Chief District Judge.

Argued: April 28, 2010

Decided and Filed: June 9, 2010

Before: CLAY and GILMAN, Circuit Judges; ZATKOFF, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jeffrey J. O'Hara, LAW OFFICE, Grand Rapids, Michigan, for Appellant. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Jeffrey J. O'Hara, LAW OFFICE, Grand Rapids, Michigan, for Appellant. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

LAWRENCE P. ZATKOFF, District Judge. Following a bench trial, Defendant was convicted and sentenced on the following six counts: (1) two counts of Sexual Exploitation of a Child in violation of 18 U.S.C. § 2251(a), (e); (2) two counts of

_____

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Distribution of Image of Minor Engaging in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2), (b)(1); (3) one count of Possession of Images of Minors Engaging in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2); and (4) one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).

Defendant's appeal contains the following three issues, all relating to the district court's denial of each of his four motions to suppress evidence:

> I. Whether the entry into Appellant's home and the Appellant's arrest based on a non-existent warrant resulted in Fourth Amendment constitutional violations which required suppression of the evidence seized?

> II. Whether the Appellant's Fourth Amendment constitutional rights were violated when the police made an uninvited and warrantless intrusion into his home, enabling the police to observe evidence which was used to obtain a search warrant?

> III. Whether the evidence seized pursuant to a search warrant must be suppressed because of the Fourth Amendment constitutional violations involved in obtaining that search warrant?

For the reasons that follow, we AFFIRM the judgment of the district court.

## I.  BACKGROUND

Defendant was targeted as part of an international child pornography investigation involving authorities from the United States and Canada. As part of the investigation, undercover Canadian officials communicated with Defendant in an internet chat room that was believed to be a forum for exchanging child pornography. The online conversations contained graphic sexual talk, including Defendant's claims that he had engaged in sexual activities with his 13-year-old daughter "S."[1]

---

[1] The district court and the parties referred to Defendant's minor daughter as "S." We refer to her in the same manner.

In conjunction with these chat sessions, Defendant began to electronically transfer computer files that contained videos and images of child pornography. During a March 1, 2006, chat session, Defendant sent the Canadian officials two files containing videos depicting child pornography. He also provided three images of a young female, later determined to be S. On March 10, 2006, Defendant sent the agents another pornographic video file, which he claimed involved himself and S engaging in sexual activity. When questioned, Defendant acknowledged that S was 13 years old at the time the video was filmed.

The Canadian agents traced the Internet Protocol (IP) address of the transferring computer to Comcast, located in Michigan. The investigation was thereafter turned over to Immigration and Customs Enforcement (ICE) in the United States. ICE issued Comcast a subpoena to ascertain the subscriber information for the tracked IP address. Comcast complied with the subpoena and informed the agents that the IP address was registered in Defendant's name at Defendant's Lansing, Michigan, home address. The agents later confirmed that a vehicle present at that address was registered in Defendant's name.

As part of the investigation, ICE Special Agent Craig Smith requested a check of Defendant's criminal history. Two different databases were consulted: The National Crime Information Center (NCIC) and the Law Enforcement Information Network (LEIN), the latter having been consulted on two occasions by different officers.

The LEIN report and the NCIC report were inconsistent in several ways. The most significant difference was that the LEIN report indicated that Defendant had an outstanding arrest warrant, while the NCIC report contained no such indication. Despite several inconsistencies between the reports, Agent Smith and ICE Special Agent Michael George, accompanied by members of the Lansing Police Department, traveled to Defendant's residence to execute the arrest warrant.[2] After arriving, they knocked on the door. Defendant's then-wife, Christine Spears ("Spears"), answered the door, and

---

[2] The warrant was issued in Oakland County, Michigan, for a probation violation. The decision to proceed on the warrant is discussed in greater detail in Part III.A *infra*.

the officers identified themselves. The officers informed Spears that they needed to speak with Defendant regarding an important matter and asked permission to enter the residence, which Spears granted.

Spears informed the officers that Defendant was feeling ill and was asleep in the bedroom. She offered to rouse him. The parties disagree over what happened next. The government contends that Spears consented to the officers' request to accompany her to the bedroom. Defendant maintains that no such consent was given, and that Spears was unaware that the officers had followed her until she reached the bedroom. While proceeding down the hallway to the bedroom, the agents recognized certain hardwood flooring, a set of French doors, and a distinctive black-and-white tile pattern in the bathroom, all of which were visible in the videos and images that Defendant had transferred to the Canadian authorities.

Upon entering Defendant's bedroom, Agent George identified himself and briefly questioned Defendant about S. Defendant's responses confirmed S's age and that it was S pictured in a non-pornographic image that Defendant had transmitted to the authorities. The officers then informed Defendant of the investigation and requested consent to search the residence and Defendant's computer. Defendant declined to consent to the searches.

At that point, Defendant was placed under arrest and advised of his *Miranda* rights. Defendant waived his rights and admitted to a sexual relationship with S and to the manufacture of pornography involving himself and S. During the interview, the agents determined that Defendant should be removed from the residence and taken to the police station. After arriving at the station, the interview continued, and Defendant confessed to engaging in sexual conduct with S on over fifty occasions. He also admitted that he manufactured the pornographic videos and images that he transmitted to the Canadian authorities.

Meanwhile, Agent Smith prepared an affidavit for a search warrant. The affidavit recited facts obtained both from the officers' observations of the residence and Defendant's statements, along with the knowledge previously gathered during the

investigation. A magistrate judge issued a search warrant, which was executed later that day.

A grand jury returned a six-count indictment. Defendant filed four motions to suppress evidence, arguing that his arrest and the subsequent search were unconstitutional. Following an evidentiary hearing, at which Defendant refused to permit his attorney to make objections, call witnesses, or "argue the facts of the case," the district court orally denied three of the motions. After requesting additional briefing on the remaining issue—the suppression of Defendant's pre-*Miranda* statements—the district court denied that motion as well.

The district court held a bench trial, at which Defendant again waived his rights to present evidence, cross-examine witnesses, and present opening and closing arguments. The district court found Defendant guilty on all six counts. At the sentencing hearing, the district court sentenced Defendant to consecutive sentences on each count, for a total sentence of 1,440 months of imprisonment. This appeal followed.

## II.  LEGAL STANDARD

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *See United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010); *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005). "Where a district court denies [a motion to suppress], this court considers the evidence 'in the light most favorable to the government.'" *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (quoting *United States v. Wellman*, 185 F.3d 651, 654–55 (6th Cir. 2004)).

This court is not restricted to considering only the evidence presented at a suppression hearing, and it may consider evidence offered at trial to uphold the denial of a motion to suppress. *United States v. Perkins*, 994 F.2d 1184, 1188 (6th Cir. 1993); *United States v. McKinney*, 379 F.3d 259, 264 (6th Cir. 1967).

### III.  ANALYSIS

**A.  Arrest Warrant**

Defendant first attacks the district court's conclusion that the officers' reliance on the arrest warrant was not unreasonable.  He alleges that the inconsistencies between the criminal history reports should have alerted the officers that the warrant was issued for a person other than Defendant (*i.e.*, a different person named Michael Hinojosa). Defendant insists that all evidence obtained as a result of the warrantless entry into his home should be suppressed.  *See Payton v. New York*, 445 U.S. 573, 590 (1980) (requiring that police officers obtain a warrant prior to entering a residence in order to effectuate an arrest unless exigent circumstances are present).

Defendant directs our attention to the following discrepancies between the LEIN and NCIC reports: (1) the reports contained different social-security numbers; (2) the reports contained different dates of birth; (3) the reports contained different driver's license numbers; (4) the listed heights varied by one inch; (5) the listed weights varied by sixty pounds; and (6) only the LEIN report indicated an active arrest warrant.  He additionally identifies several other factors that he believes should have put the officers on notice that they were dealing with two unique individuals: (1) the warrant was issued in Oakland County, to which Defendant had no known ties; (2) Defendant's only prior criminal history involved a 1995 incident that included 2 years of probation, which probationary period would have expired long before the bench warrant issued; (3) Defendant's name and hair and eye color (both brown) are all very common and therefore should not support a conclusion that the reports referred to the same person; and (4) a quick check of the Michigan Department of Corrections website would have resolved the issue in Defendant's favor.

On appeal, the government does not dispute that the relied-upon warrant was issued for a person other than Defendant.  Instead, the government contends that the Supreme Court's recent decision in *Herring v. United States*, __ U.S. ___, 129 S. Ct. 695 (2009), mandates that exclusion is not the proper remedy for mistakes that result from police negligence.

The resolution of this issue is unnecessary, however, because even if we were to assume that the officers' reliance on the arrest warrant was unreasonable under *Herring*, Defendant will be unable to obtain the relief he seeks.  As discussed *infra*, the officers received consent to enter Defendant's residence; therefore, an arrest warrant was not a prerequisite for such entry.  *See, e.g.*, *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994) ("[A] denial of a motion to suppress will be affirmed on appeal if the district court's conclusion can be justified for any reason.").

## B.  Consent

The government asserts that, despite being armed with an arrest warrant, it nonetheless sought and received consent from Spears prior to entering the residence, and again before proceeding from the entryway of the residence to the bedroom.  Defendant does not seriously dispute the initial consent, but he challenges whether the officers had consent to proceed beyond the entryway.

"It is well settled that a person may waive his Fourth Amendment rights by consenting to a search." *Carter*, 378 F.3d at 587 (citing *Davis v. United States*, 328 U.S. 582, 593–94 (1946)).  "Consent to search only vitiates the warrant requirement if consent was voluntarily given." *United States v. Aaron*, 33 Fed. Appx. 180, 183 (6th Cir. 2002) (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983)).  It is well settled that valid consent may be given by a third party with common authority over the premises. *See United States v. Matlock*, 415 U.S. 164, 171–72 (1974); *United States v. McCauley*, 548 F.3d 440, 446 (6th Cir. 2008).

"Generally, whether consent to a search was voluntarily given is a question of fact." *United States v. Buchanan*, 904 F.2d 349, 355 (6th Cir. 1990).  "It is the Government's burden by a preponderance of the evidence, to show through 'clear and positive' testimony that valid consent was obtained." *United States v. Burns*, 298 F.3d 523, 541 (6th Cir. 2002) (quoting *United States v. Riascos-Suarez*, 73 F.3d 616, 625 (6th Cir. 1996) (internal quotation marks omitted)).  When determining whether consent was voluntarily given, the reviewing court is to examine the totality of the circumstances involved. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

There has been no challenge to Spears's authority or ability to provide valid consent. The record further indicates that the interaction between the officers and Spears was devoid of coercion or intimidation. In regard to the officers' demeanor, Spears testified that "[t]hey were fairly polite. They saw I had two small children. I mean they let it be known it was important they speak to [Defendant], but they weren't intimidating or aggressive in any way." (9/19/07 Mot. Hr'g Tr. at 99). In fact, Spears's cooperation was the reason why the officers continued to seek consent, rather than proceed on the authority of the warrant, which Agent George termed a "soft approach." (9/19/07 Mot. Hr'g Tr. at 59–60).

Agent George testified that he requested consent to follow Spears to the bedroom for "officer safety" and that Spears did not object. (9/19/07 Mot. Hr'g Tr. at 64). Spears recalled the encounter as follows:

> Q. Do you remember one of the agents saying that he asked to accompany you back to the bedroom?
>
> A: I don't recall that, but I'm not saying it didn't happen, I just don't remember.
>
> Q: Do you recall any of the law enforcement officers or agents saying that we need to accompany you for officer safety?
>
> A: I don't remember that.

(9/19/07 Mot. Hr'g Tr. at 99).

The district court credited Agent George's testimony that valid consent was requested and received for the continued entry. "We afford the district court's credibility determinations regarding witness testimony great deference and must uphold its findings of fact unless they are clearly erroneous." *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007) (citing *United States v. Horn*, 355 F.3d 610, 613 (6th Cir. 2007)). The district court's credibility finding is particularly compelling in this case because Spears's testimony did not contradict that of Agent George; rather, she simply could not recall whether she was asked for permission to further enter the residence. *See United States*

*v. Dillard*, 438 F.3d 675, 681 (6th Cir. 2006) (upholding district court's adoption of officer testimony when that testimony was not contradicted by the record).

In rebuttal, Defendant presents an alternative explanation of Spears's testimony: that the officers did not ask for, and Spears did not give, consent to proceed past the entryway. Defendant simply concludes that the district court erred in not accepting this reading. "Where there are two permissible views of the evidence," the district court does not clearly err in accepting one interpretation over the other. *United States v. Navarro-Camacho*, 186 F.3d 701, 708 (6th Cir. 1999) (citation omitted); *see also United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992); *United States v. Rose*, 889 F.2d 1490, 1494 (6th Cir. 1989).

Defendant also points out that the above testimony never indicates that Spears affirmatively responded to the officers' request, but there is no requirement that consent must be verbally given. *See Carter*, 378 F.3d at 589 ("Carter asks us to hold as a matter of law that consent must be given verbally, perhaps by some 'magic words' formula. This we decline to do."). The district court thus did not clearly err in finding that Spears's non-verbal actions constituted valid consent.

Finally, the government briefly attempts to justify the continued entry as a protective sweep under *Maryland v. Buie*, 494 U.S. 325 (1990). There is nothing in the record, other than the reference to "officer safety" in requesting the further consent, to indicate that such a sweep took place. Because the officers did not exceed the scope of the received consent, however, we need not consider this alternate justification.

Considering the totality of the circumstances, we conclude that the district court did not clearly err in finding that Spears consented to the officers' continued entry into the residence.

**C. Search Warrant**

Defendant next argues that the affidavit prepared to apply for the search warrant referenced illegally-obtained evidence that should have been suppressed, including (1) the statements he made both prior and subsequent to receiving his *Miranda* warnings;

and (2) the officers' observations of his residence.[3]  Defendant further submits that the affidavit lacks probable cause without this evidence.

### 1.  Defendant's Statements Were Properly Included in the Affidavit

#### i.  Pre-*Miranda* Statements

Defendant first challenges the inclusion of his pre-*Miranda* statements in the affidavit.  The district court concluded that *Miranda* warnings were not required because Defendant was not in custody during the preliminary questioning.

The Fifth Amendment protects a criminal defendant from compelled self-incrimination, *see* U.S. CONST. amend. V, and the Supreme Court has required that a criminal defendant be apprised of certain rights prior to a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966).  The *Miranda* requirements apply only "when there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

We consider several factors when determining whether an interrogation was of a custodial nature, including (1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions. *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009); *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003); *United States v. Salvo*, 133 F.3d 942, 950 (6th Cir. 1998).

It is significant to our inquiry that the questioning occurred at Defendant's home. This court has found that such a venue generally does not present a coercive environment. *See, e.g.*, *Panek*, 552 F.3d at 467; *Salvo*, 133 F.3d at 950.  The remaining factors do not require a finding to the contrary.  The interview was of short duration—lasting only a few brief questions—and there is nothing to suggest that the

---

[3]Defendant also objects to what he deems to be false evidence contained in the affidavit, specifically the statement that there was a valid arrest warrant.  He fails to explain, however, how the existence of an arrest warrant for an unrelated probation violation was material to the magistrate judge's probable-cause determination.

officers acted in a hostile or coercive manner. No weapons were drawn, nor were any threats made. The officers did not place Defendant in handcuffs or otherwise restrain his freedom. In addition, Defendant refused to consent to the further search of the residence, which suggests that the environment was not coercive.

Although the officers did not advise Defendant that he was not under arrest, their failure to do so does not automatically render the encounter custodial. Rather, it is merely "one factor among many" to be considered. *Panek*, 552 F.3d at 467. Likewise, Defendant was not informed of the existence of the arrest warrant. Because he was unaware of the warrant, "[its] existence could not have affected how [he] understood [his] position, which is the only relevant consideration . . . ." *United States v. Reynolds*, 762 F.2d 489, 493 (6th Cir. 1985). This reasoning similarly curtails Defendant's suggestion that, because the officers intended to arrest him the entire time, he was effectively in custody as soon as they entered the residence. *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.").

Based on the totality of the encounter, we find that the initial interrogation did not present a custodial environment such that *Miranda* warnings were required prior to questioning. Defendant's pre-*Miranda* statements were therefore properly included in the affidavit.

### ii. Post-Arrest Statements

Defendant also challenges the statements he made following his arrest, arguing that the arrest was illegal because the officers did not possess a valid arrest warrant. The district court held that the officers had probable cause to believe Defendant had committed felonies relating to the possession and transfer of child pornography.

At the time of Defendant's arrest, the arresting officers were aware of both the information gathered prior to entering the residence and the corroborating facts learned

while inside, including the recognition of the decor and Defendant's responses to their initial questioning. The district court correctly determined that probable cause to arrest Defendant existed independent of the arrest warrant. *See United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006) (holding that officers may effectuate an arrest so long as they have "reasonably trustworthy information" that would "warrant a prudent man" in believing that the defendant was committing, or had committed, a crime).

Following the valid arrest, the officers immediately advised Defendant of his *Miranda* rights, which he waived. Defendant does not argue that this waiver was involuntary or coerced. Accordingly, Defendant's post-arrest statements were properly included in the affidavit.

### 2. The Officers' Plain-View Observations Were Properly Included in the Affidavit

Defendant next argues that all evidence gained by the officers after leaving the entryway was not properly included in the search-warrant affidavit. This "evidence" consists of the officers' observations of the hardwood floors, bathroom tiling, and French doors, which the officers recognized as matching those in the videos and photographs.[4] The government responds that these items were all in plain view during their progression to the bedroom.

Defendant's argument is undermined by the fact that the officers did not "seize" any evidence. *See Horton v. California*, 496 U.S. 128, 133–34 (1990) (differentiating between observation and seizure of items in plain view); *United States v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997) ("Viewing an article that is already in plain view does not involve an invasion of privacy and, consequently, does not constitute a search implicating the Fourth Amendment[.]"). Moreover, there was no testimony that the officers manipulated any of Defendant's property when making their observations (*i.e.*, they did not open any doors, etc.). *See Arizona v. Hicks*, 480 U.S. 321, 324–25 (1987)

---

[4]In fact, it is only the tiling at issue, because Agents Smith and George each testified that the hardwood floors and French doors were visible from the entryway. (9/19/2007 Mot. Hr.'g Tr. at 40–41; 61–62).

(finding that plain-view observations turned into a Fourth Amendment search when officers moved audio speakers to ascertain ID numbers).

Here, the officers received consent to enter the house and, once inside, to proceed down the hallway and into the bedroom.  Because everything that the officers observed was in plain view from their lawful position, no constitutionally improper search occurred.  The officers therefore did not violate Defendant's constitutional rights by observing the decor of his residence, and those observations were properly included in the affidavit.

### 3.  Probable Cause Existed Prior to Entry

Finally, even if we were to excise the allegedly offending portions, we would disagree with Defendant's contention that the affidavit lacks probable cause.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause."  U.S. CONST. amend. IV.  The Supreme Court has held that a magistrate's duty in determining probable cause is to:

> [M]ake a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In *United States v. Terry*, 522 F.3d 645 (6th Cir. 2008), this court found that probable cause existed to issue a search warrant where images involving child pornography were sent from an email address registered to the defendant, and the government established that the defendant had accessed that email account at his home address. *Id*. at 648.  Likewise, in *United States v. Wagers*, 452 F.3d 534 (6th Cir. 2006), this court upheld a probable-cause finding based primarily on evidence of subscriptions to websites involving child pornography.  *Id.* at 540.  *See also United States v. Lapsins*, 570 F.3d 758, 767 (6th Cir. 2009) (affirming probable-cause finding based on images

that were uploaded using screen names connected to the defendant and his home address).

Prior to entering the residence, the officers had established that (1) videos and images involving child pornography were transferred to undercover agents from a specific IP address; (2) the IP address was registered to Defendant at a Lansing, Michigan, address; and (3) Defendant resided at the Lansing, Michigan, address. Based on the above-cited authorities, this evidence would have established the required "fair probability" that evidence of criminal activity would be found inside Defendant's residence, and it would have justified the issuance of a search warrant. *See, e.g.*, *Gates*, 462 U.S. at 238.

Defendant maintains that an IP address is insufficient to establish that evidence of child pornography would be present in his residence because IP addresses are not always accessed at the registered address. This court has considered, and rejected, similar arguments. *See Lapsins*, 570 F.3d at 767 (finding probable cause even though there was "no direct evidence that [the defendant] used a home computer to access his accounts" where the evidence showed that child pornography was uploaded under the defendant's user name and in his city of residence); *Wagers*, 452 F.3d at 540 (agreeing that "evidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, or possessed the material").

As a last resort, Defendant questions why a search warrant was not initially sought by the well-trained agents if probable cause existed prior to the entry. The agents' prudence in seeking a search warrant, however, does not negate the existence of probable cause.

## IV.  CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.