NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0077n.06

Case No. 12-1849

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MICHAEL JOHN SIMON, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

BEFORE:  BATCHELDER, Chief Circuit Judge; MERRITT and KETHLEDGE, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.**  After the district court denied his motion to suppress evidence, a jury convicted Michael John Simon of escaping from federal custody in violation of 18 U.S.C. § 751(a).  On appeal, Simon says that the district court erred by denying his motion to suppress and that the evidence at trial was insufficient to support his conviction.  For the reasons that follow, we affirm.

On May 25, 2011, while Simon was in federal custody under sentence for a federal bank fraud conviction, the Bureau of Prisons temporarily released him via a furlough transfer.  The Federal Correctional Institute in Elkton, Ohio, gave Simon a voucher for a Greyhound bus ticket so he could travel from Youngstown, Ohio, to the Renaissance Residential Reentry Center ("halfway house") in Detroit, Michigan.  Simon's furlough required that he reach the halfway house by 4:15 PM on May 25, 2011.

But Simon had other plans, and tried to take a bus to Buffalo, New York, instead of Detroit. At Simon's trial, a Greyhound ticket agent from Youngstown testified that Simon presented his voucher to her and that the voucher had "Buffalo" handwritten on it. When the agent refused to give Simon a ticket to Buffalo because "Detroit" had already been typed on the voucher, Simon was displeased, but ultimately took the ticket, boarded the bus, and reached Detroit at approximately 3:45 PM on May 25, 2011.

Simon did not check in at the halfway house by 4:15 PM. Instead, he called the halfway house and advised the officials there that he would not be reporting as required but instead was going to defect to Canada. He then went to the Canadian Embassy, but it was closed. So he spent the night in the lobby of a Marriott Hotel and the next day, May 26, went to the Canadian Embassy again, where he attempted to submit paperwork seeking "third-country, safe-asylum." His ultimate purpose was to seek "citizenship ultimately in Italy, the country of Italy."

The Embassy officials declined to assist Simon, so he went to his mother's home and spent the night; his brother drove him to the halfway house the next day, May 27. Two U.S. Marshals, Deputies Jason Richter and Amanda Seeger, arrested him there. Richter, with Seeger following in another vehicle, drove Simon back to the federal courthouse building for questioning. Before the deputies interviewed Simon at the courthouse, Richter read Simon his *Miranda* rights and then read him a waiver of those rights, which Simon subsequently read aloud for himself and signed. Simon then confessed to having called the halfway house on May 25 to announce that he was defecting to Canada and that he would not be reporting there as required.

Simon first argues that the district court erred in denying his motion to suppress his confession. He alleges that the deputies promised him leniency and that their promises prevent his waiver from being knowing, intelligent, and voluntary.

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008) (citation and internal quotation marks omitted). We determine that a factual finding is clearly erroneous when we have a "definite and firm conviction that a mistake has been committed." *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009) (citation and internal quotation marks omitted). And we give great deference to a district court's credibility determinations regarding witness testimony. *United States v. Hinojosa*, 606 F.3d 875, 882 (6th Cir. 2010).

What Simon said during questioning may be used against him if he knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). In assessing whether Simon made his waiver knowingly and intelligently,

> the relevant question is not whether the criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege, but rather whether the suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking any time.

*Adams*, 583 F.3d at 467 (alterations in original) (citation and internal quotation marks omitted).

Applying that standard, we conclude that Simon's claim is not credible. Simon specifically testified that he felt he understood his *Miranda* rights, that he read the waiver provision before signing it, and that he understood he was waiving his rights by signing. But Simon claims that,

3

despite the waiver, his confession was involuntary because of the alleged promises of leniency the deputies made. There are three requirements necessary for finding that the confession was involuntary: The deputies' activity must have been objectively coercive, the coercion in question must have been sufficient to overbear Simon's will, and the coercion must have been the crucial motivator in Simon's decision to confess. *See United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002). We have said that "a *promise* of lenient treatment or of immediate release may be so attractive as to render a confession involuntary." *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992) (emphasis added).

The district court found that the matter came down to a question of credibility; that the deputies' testimony – that they had made no promises that Simon would not be prosecuted for escape and had not acted coercively – was credible; that Simon had been "treated nicely" by the deputies; and that Simon's testimony to the contrary reflected, at best, Simon's misunderstanding of whether he could or should be prosecuted for escape. After reviewing the record, and according those findings the deference to which they are entitled, we find no error here. The deputies' statements to Simon were not objectively coercive; both deputies denied promising Simon that he would not be prosecuted; and the district court was entitled to credit the deputies' testimony over Simon's assertions. Even if Simon truly believed he had to sign the waiver to obtain leniency, that belief – in the absence of objectively coercive action by the deputies – is insufficient. *Miggins*, 302 F.3d at 397. The district court did not err in denying Simon's motion to suppress.

Simon's second argument is that the evidence at trial was insufficient to support his conviction under 18 U.S.C. § 751(a). We review his claim by asking "whether, after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The crime of escaping from federal custody, 18 U.S.C. § 751(a), has three elements: "(1) that the defendant escaped or attempted to escape; (2) from the custody of the Attorney General or his or her appointed agent . . . ; and (3) that custody was based on . . . conviction of any offense." *United States v. Maney*, 226 F.3d 660, 663-64 (6th Cir. 2000). And while proof of intent or purpose is unnecessary, the government must prove that the escapee "*knew* his actions would result in his leaving physical confinement without permission." *United States v. Bailey*, 444 U.S. 394, 408 (1980) (emphasis added). On appeal, Simon challenges only the sufficiency of evidence with respect to his mental state.

After reviewing the record and Simon's argument, we conclude that there is sufficient evidence to support Simon's conviction and, specifically, to show he acted with knowledge. The furlough authorization form, which Simon read and signed, indicated that if Simon failed "to remain within the extended limits of this confinement it shall be deemed an escape from the custody of the Attorney General punishable" under 18 U.S.C. § 751. And Simon admitted that he knew that failure to abide by the terms of the furlough would constitute escape. Simon's awareness of the furlough's terms, his attempt to reach Buffalo, his informing the halfway house he intended not to report, and his meeting at the Canadian Embassy all work together to demonstrate that he knew "his actions would result in his leaving physical confinement without permission." *Bailey*, 444 U.S. at 408. There is sufficient evidence to support Simon's conviction.

5

For these reasons, we **AFFIRM** the judgment of the district court.