**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0240n.06

**No. 11-6402**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Mar 07, 2013**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JEREMY SETH TUMMINS, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MARTIN and BOGGS, Circuit Judges; COLLIER, District Judge.[*]

BOYCE F. MARTIN, JR., Circuit Judge. Two county law-enforcement officers came to Jeremy Tummins' home to execute a search warrant for child pornography. He let them in and they questioned him, without *Miranda* warnings, for two hours. Almost from the start, in response to the questioning, Tummins made several incriminating remarks, and at the end of the encounter he signed an inculpatory statement. He then moved to suppress the statements, and the district court granted the motion. The government appealed. Because Tummins was never in custody for *Miranda* purposes, the district court erred in granting the motion to suppress. We **REVERSE**.

County sheriff's officers Levasseur and Patterson executed a search warrant at Tummins' home for computers containing child pornography. The officers arrived at Tummins' home in an

---

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

unmarked vehicle. They wore plain clothes, with their pistols visibly holstered at their hips. They did not draw their pistols while at Tummins' home, however, nor did they display or use their handcuffs. Tummins answered the door; Levasseur introduced him and Patterson as being from the sheriff's office and asked if they could come inside and talk with Tummins for a minute. They told Tummins they were from the Cyber Crime Unit and that they wanted to know how he connected to the internet. Tummins agreed to show the officers his internet connection and led them upstairs to look at his cable modem.

Levasseur then told Tummins that he had identified an IP address connected to some shared child-pornography files, which Levasseur said that he downloaded to confirm they were child pornography. Levasseur added that the IP address was associated with Tummins' house, so he had come with a search warrant. Shortly afterwards, Levasseur asked Tummins if he had ever downloaded any child pornography, and Tummins answered that he had. Over the course of the next two hours, Tummins admitted several more times that he had downloaded child pornography. Tummins' wife was present for much of this time and even participated in the conversation. The officers never physically restrained Tummins' movement in any way. At the end of the encounter, Tummins signed an inculpatory statement.

After the interrogation, a federal grand jury returned an indictment against Tummins, charging him with receiving child pornography in violation of 18 U.S.C. sections 2252A(a)(2)(A) and 2252A(b) and possessing child pornography, in violation of 18 U.S.C. sections 2252A(a)(5)(B) and 2252A(b). Tummins moved to suppress the oral and written statements he made to the officers. The district court held an evidentiary hearing at which Patterson testified and at which the transcript

of the entire encounter between the officers and Tummins, of which the officers had made an audio recording, was entered into evidence. Levasseur, the officer who did most of the questioning, did not testify. The district court granted Tummins' motion to suppress with a thirty-six-page memorandum. The government moved the district court to reconsider its order; the district court granted the motion but reaffirmed its previous order. The government timely appealed.

We have jurisdiction to consider the government's appeal of the district court's suppression order. 18 U.S.C. § 3731. Whether a defendant was in custody is a mixed question of law and fact subject to de novo review. *United States v. Crossley*, 224 F.3d 847, 860 (6th Cir. 2000). We must review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (citing *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007)). We must draw all factual inferences in favor of upholding the district court's suppression order. *Id.* at 465, (citing *United States v. Dillard*, 438 F.3d 675, 680 (6th Cir. 2006)).

To determine whether an individual was in custody for *Miranda* purposes, we must examine all of the circumstances surrounding the interrogation, but we must ultimately determine whether the law enforcement officers restrained the suspect's freedom of movement to the degree associated with a formal arrest. *Stansbury v. California*, 511 U.S. 318, 322 (1994) (citing *California v. Behler*, 463 U.S. 1121, 1125 (1983) (*per curiam*) (rest of citation omitted)). Law-enforcement officers may pressure a suspect to speak without necessarily putting the suspect in custody for *Miranda* purposes; or, as we have put it, "[t]he question in the end is not whether the individual felt pressure to *speak* to the officers but whether she was forced to *stay* with them." *Panak*, 552 F.3d at 471 (emphasis in the original). While the record in this case could support a finding that Levasseur and Patterson

pressured Tummins to speak to them, the record could not support a finding that they forced Tummins to stay with them.

Here, neither Levasseur nor Patterson forced Tummins to remain with them such that Tummins was in custody to the extent associated with a formal arrest. Indeed, Levasseur's and Patterson's conduct resembles that of other officers in encounters with suspects that we found not to be custodial. *See, e.g., United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (agent never made any show of force or brandished a firearm or handcuffs, or any other equipment ordinarily associated with formal arrest or custody); *Crossley*, 224 F.3d at 862 (agent never brandished a firearm); *Panak*, 552 F.3d at 467 (investigators did not brandish firearms nor handcuffs); *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) (officers did not put the suspect in handcuffs or otherwise restrain his freedom). While their pistols were visibly holstered at their hips, neither Levasseur nor Patterson brandished them, nor did they display handcuffs or handcuff Tummins. They never restrained Tummins' freedom of movement to the degree associated with a formal arrest. It is also significant that the entire encounter took place in Tummins' home. *See United States v. Panak*, 552 F.3d 462, 465-66 (6th Cir. 2009) (noting that when police question a suspect in a residence, the encounter often will not rise to the kind of custodial situation that necessitates *Miranda* warnings).

Moreover, whether an officer explicitly tells the suspect that he or she is not under arrest is an important part of the analysis of whether a suspect is in custody. *United States v. Swanson*, 341 F.3d 524, 530 (6th Cir. 2003) (citing *United States v. Salvo*, 113 F.3d 943, 951 (6th Cir. 1998)). Where an officer tells a suspect that he or she is not under arrest, we have tended to find that the

suspect was not in custody. *See, e.g., Salvo*, 133 F.3d at 946 (suspect not in custody where, at the beginning of the encounter, one of the agents told the suspect that he was not under arrest, that he was free to leave at any time, and that he did not have to talk to them); *Coomer v. Yukins*, 533 F.3d 477, 487 (6th Cir. 2008) (suspect not in custody because officer told the suspect that she was not under arrest and that the police would leave if she asked them).

Here, Levasseur did tell Tummins that he was not under arrest, telling him "[y]ou are not under arrest right now. I'm not here for you, I'm here for your computer, okay?" Later, Levasseur again emphasized Tummins was not under arrest, saying "[l]ike I told you, you're not under arrest. I didn't come here to get you. I come [sic] here to get your computer." These facts further show that the officers did not force Tummins to stay with them.

Because the record before us does not show that the officers forced Tummins to stay with them, he was not in custody so as to require the officers to comply with *Miranda*. Consequently, the district court erred in suppressing his statements. Therefore, we **REVERSE** the district court's judgment.