NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0072n.06

No. 19-5105

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 31, 2020
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

JOSHUA TUCKER,

      Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

BEFORE:     GILMAN, McKEAGUE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Joshua Tucker argues that the district court erred by denying his motion to suppress evidence seized during a warrantless search of his house and by precluding him from introducing the record of his felony conviction at trial. We reject his arguments and affirm.

I.

In 2016, Tucker pleaded guilty to aggravated burglary, a felony in Tennessee. He was sentence to a three-year prison term, most of which was suspended. As part of his probation, Tucker agreed to allow his case officer or any law enforcement officer to search his house "upon request" and without a search warrant.

In early 2017, a DEA agent saw that Tucker's phone number was among those called by a suspected drug dealer. The agent told officers with McNairy County's Narcotics Unit, including officers Matt Rickman and Kim Holley, that they should put Tucker "on their radar."

Before long Tucker was arrested for a probation violation (the record does not specify what the violation was). Tucker managed to post a $50,000 bond, even though he was apparently unemployed at the time. Within two weeks he was arrested for another probation violation, but that same day he posted a $75,000 bond. Rickman and Holley were suspicious about Tucker's source of funds, so they listened to his jailhouse calls. During one call, Tucker told his girlfriend to pay the bail-bond company up to $7,500 in cash for the bonds.

That same day, Rickman and Holley went to Tucker's house to do a probation search. Tucker was outside when they arrived. Rickman asked, "You're on searchable probation, right?" Tucker answered, "Yeah." Rickman responded, "Well, we're here to search." The officers then entered Tucker's house, where they found two guns, a meth pipe, and a locked safe. Holley asked Tucker and his girlfriend (who was also there) for the safe's combination, but they claimed not to know it.

The officers left to get a search warrant for the safe; Tucker fled the scene. Rickman filled out the warrant application, which recited the items found in Tucker's house. Warrant in hand, the officers returned to the house and opened the safe, wherein they found drugs and cash.

Tucker was later arrested. A federal grand jury indicted him on the following offenses: conspiracy to distribute methamphetamine in violation of 21 U.S.C § 841(a)(1); aiding and abetting the distribution of methamphetamine, in violation of 21 U.S.C § 841(a)(1) and 18 U.S.C. § 2; distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846; being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and possessing a firearm in

furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924 (c)(1)(A). Tucker pleaded not guilty across the board.

Before trial, Tucker moved to suppress the evidence seized during the search of his house. He argued that, despite his status as a probationer, the search was unlawful because the officers lacked reasonable suspicion to support it. The district court denied the motion.

At trial, Tucker and the government stipulated to his felony conviction. Yet Tucker sought to introduce a certified copy of that conviction, which would have informed the jury that he had been convicted of aggravated burglary in particular. The district court sustained the government's objection to that evidence. The jury convicted Tucker on all counts, and the district court sentenced him to 300 months in prison. This appeal followed.

## II.

Tucker argues that, despite his status as a probationer, the district court should have suppressed the evidence seized during the warrantless search of his house. We review the district court's legal conclusions de novo and factual findings for clear error. *United States v. Hinojosa*, 606 F.3d 875, 880 (6th Cir. 2018). In doing so, we consider the evidence in the light most favorable to the district court's decision. *See United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. Generally stated, whether a search is reasonable depends "on the one hand, on the degree to which it intrudes on the individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 119 (2001). Here, as in *Knights*, Tucker's "status as a probationer subject to a search condition informs both sides of that balance." *Id.* Moreover, in *United States v. Tessier*, 814 F.3d 432, 433-34 (6th

Cir. 2016), we answered yes to the question "[w]hether, under the Fourth Amendment, a probationer whose probation order contains a search condition may be subjected to a search in the absence of reasonable suspicion."

Here, Tucker's consent to warrantless searches as a condition of his probation "significantly diminished [his] reasonable expectation of privacy." *Knights*, 534 U.S. at 120. Opposing that diminished interest is the state's interest in preventing recidivism, *see id.*, which for two reasons is especially strong here. First, Tucker had recently been arrested twice in less than two weeks for violations of his probation conditions—indeed violations serious enough to require him to post bonds totaling $125,000. Second, Tucker was in fact able to post those bonds, despite lacking any known legitimate source of income. That gave the officers reason to think he had an illegitimate source of cash. On these facts, the government's interest in preventing Tucker from committing yet another probation violation outweighed his diminished interest in privacy—which is to say the search was reasonable. *See Tessier*, 814 F.3d at 433.

Tucker also challenges the district court's exclusion at trial of a certified copy of his prior felony conviction. We review the exclusion for an abuse of discretion. *See United States v. Cleveland*, 907 F.3d 423, 435 (6th Cir. 2018). The parties had already stipulated that Tucker was a felon for purposes of the felon-in-possession charge. Thus, the excluded evidence would have done nothing more than inform the jury that Tucker's prior conviction had been for aggravated burglary under Tennessee law. That fact was plainly irrelevant to any element or defense relating to the felon-in-possession charge or any other charge at trial. *See generally* Fed. R. Evid. 401. Indeed, the court's jury instructions would have told the jury to disregard that fact (and to consider only the fact of Trucker's felony) had the copy of his conviction been admitted. Nor do we see

any prejudice to Tucker resulting from the jury's ignorance of his status as an aggravated burglar.

The district court did not abuse its discretion.

The district court's judgment is affirmed.