NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0297n.06

Case No. 21-6199

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 22, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| TERRY Y. STEGALL, | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: BOGGS, LARSEN, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Terry Y. Stegall pleaded guilty to distribution of fentanyl and possession of a firearm by a convicted felon. He was sentenced to 24 months in prison followed by three years of supervised release. After his release from custody, the district court twice found that Stegall violated the conditions of his supervised release. The first time, Stegall admitted that he had committed two violations. This appeal challenges the second proceeding, where the district court revoked Stegall's supervised release for selling fentanyl. After an evidentiary hearing, the district court sentenced Stegall to 24 months in prison followed by six years of supervised release. Stegall argues on appeal that the district court committed clear error in finding that he sold fentanyl, as the finding is not supported by the evidence.

For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

On April 12, 2019, Terry Y. Stegall pleaded guilty to distribution of fentanyl and possession of a firearm by a convicted felon. *See* 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1). The district court sentenced him to 24 months of imprisonment followed by three years of supervised release. Under the mandatory terms of his supervised release, Stegall was barred from committing another federal, state, or local crime, and specifically from unlawfully possessing a controlled substance.

Stegall first violated the terms of his release by using marijuana and testing positive for the controlled substance. He admitted the violations, and the district court revoked his supervised release and sentenced him to two months' imprisonment followed by three years of supervised release. On June 21, 2021, Stegall was released from custody and began a reimposed term of supervision.

A few months later, the government again moved the district court to revoke Stegall's supervised release. This time the government alleged that Stegall sold fentanyl to Ronald Rachford, which resulted in Rachford's death by overdose, and thus committed the state-law offense of trafficking in a controlled substance in the first degree. The district court held an evidentiary hearing on the violation during which it heard testimony from Jason Friend, a Richmond, Kentucky police officer, and reviewed other evidence offered by the government.

According to Officer Friend, Rachford visited Stegall's home on Saturday, July 17, 2021, to purchase fentanyl. Rachford's girlfriend suspected that he "might be going over there to buy drugs." Rachford's girlfriend drove him to an apartment building where Stegall resided. Before going to the apartment, Rachford identified Stegall for his girlfriend by showing her Stegall's Facebook profile, stating "[t]his is the guy that I'm going to meet." Rachford exited his girlfriend's

vehicle, walked down the street, and went into a downstairs apartment at 308 McDougal Avenue. After a "couple moments, maybe a minute or two," Rachford returned to his girlfriend's vehicle. At this point, Rachford's girlfriend was "convinced that [he] was there to buy some type of drugs because she said, 'Who goes over there to see their friend literally for a minute or two and then comes right back out?'" But Rachford denied buying drugs when his girlfriend asked him. And Rachford's girlfriend did not see any drugs or witness Rachford using drugs at any time.

The government also introduced text messages between Stegall and Rachford from the date and time of the alleged drug sale, July 17, 2021, from 12:45 p.m. to 1:31 p.m. Officer Friend determined that the communication was between the two men based on Rachford's notes referencing Stegall's presumed alias and phone number, and from the phone carrier where the number was registered to Stegall's presumed alias (Ruebga grandson). In the messages, Rachford texted Stegall that "I'm fixing to come grab some food. Where are you going to be at? My girl don't know I'm trying to get nothing so on the low" and "WYA." Officer Friend testified that "food" is a common slang term for heroin or fentanyl and "WYA" means "where you at?" Stegall then responded, "I'm down by the Cook Out. What you was trying to do so I can have it ready." According to Officer Friend, Cook Out is a restaurant in Richmond, Kentucky located at 120 Eastern Bypass, near the apartment complex where Stegall resides. And this message shows that "Stegall wanted to know how much heroin or fentanyl. . .Rachford was wanting to buy or how much money he was willing to buy [sic] to line up with the amount of product he would be willing to sell him." Rachford responded at 1:02 p.m., "40. I need that strong strong bruh," to which Stegall responded "shit, not fresh out you don't. Last thing I need is you to fuck up and it fall back on me." Officer Friend testified that "strong strong" refers to potent drugs. At 1:06 p.m., Rachford replied, "bro, I know what's up. I'm only going to do very little" and at 1:13 p.m., Rachford sent

Stegall a message stating "where you at, bro? I'm at Shell, I can come to you now in like five minutes." At 1:15 p.m., Stegall replied by confirming his location, "Down the street from there." Then, Rachford placed a number of calls to Stegall, including a 53-second outgoing call at 1:20 p.m., a 47-second outgoing call at 1:25 p.m., and a 39-second call at 1:31 p.m. Rachford's final text message to Stegall stated "hey, I'm in a little blue car bro, I'll be waiting on you." According to Officer Friend, and based on his conversations with Rachford's girlfriend, these text messages match the timeline of Rachford's arrival at the McDougal Avenue apartments and when Rachford got out of the vehicle.

The next day, July 18, Rachford returned to a drug-rehabilitation facility in Morehead, Kentucky where he had been staying; he tested negative for drugs upon entry, and, after a search, was not found to be hiding drugs. On July 19, 2021, Rachford was kicked out of the facility, however, for aggressive behavior. His girlfriend picked him up from the facility and at 7:00 p.m. or 8:00 p.m. that evening, she and a neighbor carried Rachford "into [her] apartment because he wasn't able to stand and he was unconscious." Rachford was pronounced dead the next morning "from a fentanyl overdose, which was the sole contributing factor to his death." According to Officer Friend, there was no indication in Rachford's phone or from Rachford's girlfriend that "[Rachford] would have purchased any narcotics other than th[ose] from [the time period of his meeting with Stegall] to his death."

At the conclusion of the evidentiary hearing, the district court found that "that the violation occurred as alleged" and that Stegall sold fentanyl to Rachford. The district court weighed Officer Friend's testimony, including the information Officer Friend received from Rachford's girlfriend, and the government's phone-record evidence. The district court then concluded there was "clear and convincing evidence in this particular case, that [Stegall] sold fentanyl to [Rachford]," in

violation of the terms of his supervised release. The district court specifically made the following

findings of fact at the evidentiary hearing:

> The victim's girlfriend takes him to the area, very short stay, meeting with the defendant in the case. The drugs are purchased. The drugs are then not used over the weekend. This victim then goes back to the treatment facility with the drugs that are not found during the search. There is no other indication whatsoever that this victim acquired the drugs from any source at the treatment facility. There is no indication he used the drugs that he acquired from the defendant prior to that time. But after the confrontation and after he is kicked out, it would certainly make sense at that point, the Court may conclude based upon all the evidence that that was the time of the use of some or all of the drugs. And based upon the quantity, it would not have been required that the decedent use all of the drugs. But regardless of that determination, he did use drugs purchased from the defendant at that time. He declines until his girlfriend picks him up. By the time they get to Richmond, he's not able to walk. Seems that he is at that point incapacitated or he's passed out, that is from the use of the drugs that the defendant sold. And during the night, although the girlfriend was not with him the entire period of time, there's—based upon the description of his condition, there is no indication that he regained consciousness sufficient to go out and purchase drugs from other sources or use other drugs that might have been hidden perhaps in the apartment. The search indicated there was no other drugs in the apartment. So I do conclude, based upon clear and convincing evidence in this particular case, that this defendant sold fentanyl to the victim. The drugs were used by the victim, they resulted in his death.

As a result, the district court revoked Stegall's supervised release and sentenced him to 24 months

in prison followed by six years of supervised release.

## II. LEGAL STANDARD

A district court may revoke a term of supervised release after a hearing if it finds by a

preponderance of the evidence that the defendant violated a condition of supervised release.

18 U.S.C. § 3583(e)(3); *United States v. Givens*, 786 F.3d 470, 471 (6th Cir. 2015). "We review

a district court's decision to revoke supervised release for abuse of discretion, giving fresh review

to its legal conclusions and clear-error review to its fact findings." *United States v. Kontrol*,

554 F.3d 1089, 1091-92 (6th Cir. 2009) (citations omitted). "A district court's factual

determination is 'clearly erroneous when "although there is evidence to support it, the reviewing

court on the entire evidence is left with the definite and firm conviction" that the district court made a mistake.'" *United States v. Vance*, 956 F.3d 846, 853 (6th Cir. 2020) (quoting *United States v. Ellis*, 938 F.3d 757, 761 (6th Cir. 2019)). Thus, "we affirm a district court's finding of fact so long as the finding is 'plausible in light of the record viewed in its entirety[.]'" *United States v. Grant*, 15 F.4th 452, 457 (6th Cir. 2021) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

### III. ANALYSIS

Stegall argues that the district court clearly erred in its factual findings. For support, he identifies facts in the record that, according to him, do not make his sale of fentanyl to Rachford more likely than not. First, he draws attention to the facts that Rachford denied purchasing any drugs to Rachford's girlfriend and she did not see any drugs in his possession. Second, the rehabilitation facility did not find any drugs on Rachford when he entered to the facility after his weekend stay with his girlfriend. Third, law enforcement did not find any controlled substances at Stegall's apartment or on his person at the time of his arrest. And fourth, the text message evidence indicates Stegall's refusal to sell drugs to Rachford due to his possible overdosing. Therefore, according to Stegall, it was a clear error to conclude that he sold fentanyl to Rachford. Instead, "it was far more likely than not that Mr. Rachford obtained fentanyl at his rehabilitation facility sometime after he was readmitted. . . "

The district court acted within its discretion in concluding that Stegall violated the condition of his release forbidding him from committing another federal, state or local offense and in revoking his supervised release as a result. A district court's finding of fact is not clearly erroneous "simply because there is evidence in the record that might support a different finding." *Vance,* 956 F.3d at 853 (quoting *United States v. Fruehauf Corp*., 577 F.2d 1038, 1041 n.3 (6th

Cir. 1978)). In marshaling the evidence as he has, Stegall merely highlights evidence that, at best, might support a different result. The evidence does not, however, establish clear error. And Stegall does not challenge the competency of the government's proofs. Indeed, we have held that it is enough for the district court to rely on "reasonably reliable evidence," which can include hearsay. *United States v. Thompson*, 314 F. App'x. 797, 799 (6th Cir. 2008) (per curiam) (quoting *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991)). Rather, Stegall's approach is much like the defendant's approach in *United States v. Hinojosa*, where the defendant argued that the district court erred in not accepting his reading of the facts. 606 F.3d 875, 882 (6th Cir. 2010). Instead, the defendant offered an alternative explanation for the evidence in the record. *Id.* In reviewing the district court's decision, this court considered the totality of the circumstances and held that the district court did not clearly err in accepting the government's explanation of the evidence in the record, stating that "where there are 'two permissible views of the evidence,' the district court does not clearly err in accepting one interpretation over the other.'" *Id.* (quoting *U.S. v. Navarro-Camacho*, 186 F.3d 701, 708 (6th Cir. 1999). The same is true here.

As in *Hinojosa*, Stegall faults the district court for not accepting his alternative explanation: that Rachford purchased fentanyl at the rehabilitation facility, not from Stegall while he was away from the facility. But the district court's findings of fact are not clearly wrong and are supported by competent evidence in the record. Officer Friend's testimony and the text messages between Rachford and Stegall established that the day before he returned to the facility, Rachford arranged to meet with Stegall to purchase drugs. Friend explained that the term "food" used in the messages is a common slang for narcotics. Rachford showed his girlfriend Stegall's picture on Facebook as the friend he would be visiting; she drove him to the area where Stegall resided, following Rachford's instructions to park down the street from the actual apartment building where he was

supposed to visit his friend; and Rachford was gone for only one or two minutes before returning to the car. Despite his protests to the contrary, his girlfriend found his actions to be suspicious and believed that he met someone to buy drugs. Moreover, despite Stegall's reservations about providing Rachford's requested quantity of drugs, there is no evidence of an outright refusal to sell him some quantity and Rachford followed through with the meeting as discussed in the exchange of text messages. The district court accepted this evidence and relied on it in forming its conclusion. Moreover, it did not do so to the exclusion of the evidence to which Stegall now points. Indeed, the district court specifically acknowledged the possibility that Rachford obtained fentanyl at the rehabilitation facility, but after weighing the other evidence in the record, including Officer Friend's testimony and the government's exhibits, the court concluded that "possibilities are not sufficient to overcome the clear evidence. . .in this particular case." In particular, the district court noted that even though the facility found no drugs on Rachford when he returned to the facility, there was also no indication that someone in the facility provided them to him. The court also reasonably concluded, based on the description of Rachford's decline, that he used the drugs before his girlfriend picked him up from the facility and had no opportunity from that point until his death to purchase drugs from some other source. As a result, the district court determined the evidence of Stegall's violation to be "clear and convincing."[1]

In sum, on review of the full record, this court is not left with the "definite and firm conviction" that the district court made a mistake. *Vance*, 956 F.3d at 853 (quoting *Ellis*, 938 F.3d at 761). As noted by the district court, the government correctly points out that even though there

---

[1] Although the district court mentioned the clear and convincing evidence standard, it acknowledged that the statutory preponderance standard "governed" its decision. *See* 18 U.S.C. § 3583(e)(3). Moreover, because the clear and convincing evidence standard is more onerous than preponderance of the evidence, *see Cooper v. Oklahoma*, 517 U.S. 348, 359-362 (1996), the district court's conclusion that there was clear and convincing evidence of a violation necessarily means there was also a preponderance of the evidence.

were two (or more) possible ways that Rachford could have obtained fentanyl, the district court did not clearly err in choosing one record-supported version of events over another. We conclude that the district court's findings of fact are "plausible in light of the record viewed in its entirety[.]" *Grant*, 15 F.4th at 457 (quoting *Anderson*, 470 U.S. at 574).

## IV. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.